### JACKSON *against* LOOMIS;

*In an action of trespass for mesne profits against a bona fide purchaser, he shall be allowed against the plaintiff, in mitigation of damages, the value of permanent improvements made in good faith, to the extent of the rents and profits claimed by the plaintiff.*

TRESPASS for mesne profits, tried at the Washington circuit, July 15th, 1823; before WALWORTH, C. Judge. On the trial, the plaintiff produced in evidence an exemplification of a record of recovery, in an action of ejectment, duly signed and filed on the 5th day of March, 1822; by which it appeared that the demise in the declaration was laid on the 2d day of February, 1818; and it was admitted by the defendant, that a writ of possession had been issued on the judgment, and the lessor of the plaintiff put into possession of the premises, on the 15th July, 1822. Robert Wilcox was then sworn as a witness on the part of the plaintiff, and testified that he knew the premises recovered in the action of ejectment; that about 32½ acres were cultivated lands; that the annual worth or value of the 32½ acres, over and above taxes and ordinary repairs, was 2 dollars *per* acre, amounting in the whole to sixty-five dollars *per annum.*

The defendant then offered to prove that on the first day of May, 1812, he entered into possession of the premises as a *bona fide* purchaser, for a valuable consideration, by virtue of a deed from one James Wells, who had been reported the owner of the premises, and had been in the possession for many years previous to the sale to the defendant; that the defendant continued to possess and enjoy the premises peaceably, without interruption, until the 2d day of February, 1818, when the lessor of the plaintiff in the action of ejectment claimed the premises by virtue of a sale under a mortgage, executed by Wells anterior to the date of the deed under which the defendant held the premises, and commenced the action of ejectment as mortgagee; that the defend

ant resisted the claim until it was finally decided against him in the Court for the Correction of Errors. That from the 2d day of February, 1818, to the time of the decision, the defendant had expended in labor and advances in making permanent, useful and beneficial improvments upon the premises, a sum more than equal to the value of the annual income from the second day of February, 1818, until possession of the premises was delivered; that the improvements made by the defendant consisted in digging and gathering stones from the soil on the premises, and building stone walls or fences around the premises, and forming them into convenient lots. Which evidence the counsel for the defendant insisted should be admitted and allowed as decisive to entitle the defendant to a verdict, and to bar the plaintiff from a recovery, and, at all events, that it should be admitted and allowed in mitigation of damages. But the counsel for the plaintiff insisted that the evidence was not sufficient, and should not be admitted or allowed either to entitle the defendant to a verdict, or in mitigation of damages. The Judge refused to receive the testimony, either for the purpose of entitling the defendant to a verdict, or in mitigation of damages, and the jury gave a verdict for the plaintiff for $287 damages. To this opinion the defendant excepted, and the question now came before the Court on a bill of exceptions, by way of motion for a new trial.

*J. L. Wendell*, for the defendant. Trespass for mesne profits is an equitable action, intended to do justice to the plaintiff by putting him in as good a situation as he would have held, provided he had not been dispossessed. If waste has been committed, the damages may be increased accordingly, beyond the measure of the rent, to an extent which will make him whole. And, on the other hand, if improvements are made of a permanent and beneficial nature, and the defendant entered in good faith, a jury are bound, as honest men, to deduct their value from the damages. We do not claim, by way of set-off, an allowance for all the improvements. We are aware that this is inadmissible; and that we cannot go beyond answering the claim for damages. Nor

do we pretend that where a defendant enters with knowledge he has no title, he should even be allowed to mitigate damages by improvement ; nor do we ask an allowance for improvements, which are merely showy and unsubstantial, or unappropriate to the premises. These, we agree, should be disallowed, because not beneficial. Suppose a defendant entering in good faith, and, by labor and expense, changing that which was worthless before into a valuable farm, turning for instance a barren marsh into a fruitful field, would it not be revolting to every feeling of justice, that a plaintiff should take damages upon the basis that he had himself made the improvement; that the defendant should not only lose his labor, but pay the income which that labor had created?

In *Moore* v. *Cable*, (1 John. Ch. Rep. 387, 388,) the party, standing in the place of a mortgagee, entered without right, and with a full knowledge that this was so. To give a mortgagee an indefinite latitude in improving the estate, might entirely defeat the title of the mortgagor. Beside the case is distinguishable in another point of view. The mortgagee knows that he may not be deprived of his lands. He improves for his own benefit. Yet the Chancellor allowed the mortgagee, in that case, what was denied to us in this. At any rate, the plaintiff ought not to recover for the annual value of the land as enhanced by the defendant himself.

*R. Weston*, contra. The question presented by the case is, whether, after denying the plaintiff's title, and putting him to an expensive litigation in its support, the defendant can finally turn round upon him in an action for mesne profits, and demand a deduction of improvements. This question has, I believe, never been directly decided ; but it has been repeatedly held, that the damages in an action for mesne profits, necessarily follow a recovery in ejectment. They are an inseparable incident. Even a recovery of the same premises, in a cross ejectment, will not protect the defendant. The annual value of the land is the measure of the damages, whatever may have been the views of the defendant in taking possession. The land, no matter what may

be its increase of value, and whether it arise from the labor of the defendant or any other cause, belongs to the plaintiff, with all its permanent improvements ; and he is entitled to the rent. It is well settled that the defendant can have no action for the price of his labor ; a promise to pay him for it would be a *nudum pactum ;* and to allow a deduction would be making substance yield to form. Had the land been voluntarily surrendered six years ago, the defendant could have recovered nothing for his improvements ; but by obstinately holding out, and maintaining possession to the last, he gains the use of the land.

*Wendell*, in reply, said he had omitted to cite *Murray* v. *Gouverneur*, (2 John. Cas. 441,) which was an action for the mesne profits, and where Kent, J. said, " as to the sums expended by the appellant for repairs, it may be left for liquidation in an action for the *mesne profits* if the respondents should think proper to sue for the rents and profits. The action for mesne profits is a liberal and equitable action, and will allow of every kind of equitable defence."

*Weston*, would merely say, that the remark of Kent, J. was *obiter*. The question here in controversy did not arise in that case.

*Curia*, per SAVAGE, C. J. Though I find no cases in point upon the question presented, either in England or this state, there are several which bear upon it. In the case of *Van Alen* v. *Rogers*, (1 John. Cas. 281,) the defendant held the premises under a contract with the devisor of the plaintiff. In an action for mesne profits, the defendant offered to prove that by permission of the original owner, he built a house, barn and store then occupied by the plaintiff. The Court say the improvements were made antecedent to the plaintiff's title ; if the defendant is entitled to compensation, he must seek it from the personal representatives of the devisor ; not from the plaintiff. They do not say what they would have held, if the original owner had brought the suit. In *Murray* v. *Gouverneur*, (2 John. Cas. 441–2, in error,) Kent, J. who

ALBANY,
Feb. 1825.

Jackson
v.
Loomis.

gave the opinion of the Court, says, " as to the sum expend-ed for repairs, it may be left for liquidation in an action for the mesne profits, if the respondents should think proper to sue for the rents and profits. The action for mesne profits is a liberal and equitable one, and will allow of every kind of equitable defence." In *Moore* v. *Cable*, (1 John. Ch. Rep. 387-8,) the question was whether a mortgagee in possession was entitled to his improvements against the mortgagor applying to redeem. The Chancellor decided he was not, but that the mortgagee should not be holden to allow for rents and profits, which had exclusively arisen from his own expenditures in improvements ; and that he should be allowed for necessary repairs, though not for clearing land.

There is certainly no reason, in general, why the owner of land should be compelled to pay for improvements which he neither directed nor desired, as a condition on which he is to gain possession of his property. But when an occupant has taken possession under a *bona fide* purchase, and made permanent improvements, it is very hard for him to lose both land and improvements. If the plaintiff is not content with acquiring possession of his property in an improved condition, after he has neglected to assert his title for a number of years, it is certainly equitable that the defendant should be allowed the value of his improvements, made in good faith, to the extent of the rents and profits claimed. This view of the subject is fully supported by *Green* v. *Biddle*, (8 Wheat. Rep. 81, 82,) and the authorities there cited, especially *Coulter's case*, (5 Co. Rep. 30.) Most clearly the defendant should not be compelled to pay an enhanced rent in consequence of his own improvements. The defendant is entitled to a new trial.

New trial granted.(*a*)

(*a*) The value of improvements made by the defendant may be set off against a claim for mesne profits ; but profits before the demise laid should be first deducted from the value of the improvements. (*Hylton* v. *Brown*, C. C. April, 1808, Pennsylvania. Whart. Dig. Ejectment, I. pl. 74, p. 188, M. S. Reports.)