ALBATROSS, The, (SUTTON v.)

[See Sutton v. The Albatross, Case No. 13,645.]

---

· ALBEE, (INGRAHAM v.)

[See Ingraham v. Albee, Case No. 7,044.]

---

## Case No. 134.

### ALBEE v. MAY.

[2 Paine, 74.][1]

Circuit Court, D. Vermont. May Term, 1834.

CONSTITUTIONAL LAW — EX POST FACTO AND RETROSPECTIVE LAWS.

1. A state statute, retrospective in its operation, allowing ejected occupants of land to recover for improvements made by them while in possession, *held* to be a valid law, not being repugnant to the constitutions of the state or of the United States.

[Cited in Litchfield v. Johnson, Case No. 8,387. See, also, Society v. Wheeler, Id. 13,156.]

[See note at end of case.]

2. By the common law, the owner, when he recovers possession, is entitled to the improvements without paying for them. Its maxim of "caveat emptor" is designed to prevent intrusions on land without proper inquiry as to the title. The civil law, on the other hand, allows a bona fide possessor an indemnity for beneficial improvements, which seems to be an equitable rule; and whether a court of equity, on a bill to recover the rents and profits, would not allow a bona fide possessor to deduct his actual expenses for such improvements? Quære.

3. Retrospective laws divesting vested rights are impolitic and unjust; but they are not ex post facto laws within the meaning of the constitution of the United States, nor repugnant to any other of its provisions; and if not repugnant to the state constitution, a court cannot pronounce them to be void, merely because in their judgment they are contrary to the principles of natural justice. A remedy for such legislation rests with the people, and long acquiescence on their part strengthens the reasons why the judiciary should not interfere.

[Cited in Drehman v. Stifle, 8 Wall. (75 U. S.) 603.]

[See note at end of case.]

At law. This was an action [by Albee and Bundy against May] to recover under the statute of the state passed November 15th, 1820, the value of betterments or improvements made on land. [Judgment for plaintiffs.]

The defendant had recovered the lands in ejectment of the plaintiffs. Afterwards the plaintiffs brought this action, which was tried at the May circuit, 1831, and a verdict taken for the plaintiffs, subject to the opinion of the court upon a case reserving the questions of law. The plaintiffs became bona fide purchasers of the land, and made the improvements prior to the 15th of November, 1820. The act of 15th November, 1820, contained the following proviso: "This act shall not extend to cases arising after

[1][Reported by Elijah Paine, Jr., Esq.]

the passing of this act." Page 180. A similar act had been passed in 1800, containing the same proviso, and had with the proviso been several times re-enacted prior to the act of 1820, so that when the improvements were made there was no law giving an action for their recovery; the law then in existence only applying to cases which had occurred previously to its passage.

D. Kellogg, for plaintiffs, cited:

[Cotton v. Wallace,] 3 Dall. [3 U. S.] 302; [Satterlee v. Matthewson,] 2 Pet. [27 U. S.] 380, 412; [Wilkinson v. Leland,] Id. 627; [Sommers v. Johnson,] 4 Vt. 278, 280; [Call v. Hagger,] 8 Mass. 423; [Bacon v. Callender,] 6 Mass. 303; [Patterson v. Philbrook,] 9 Mass. 151; [Locke v. Dane,] Id. 360, 362; [Goshen v. Stonington,] 4 Conn. 210, 222; [Dash v. Van Kleeck,] 7 Johns. 506; 2 Kent, Comm. 274; Vt. State Papers, 395, 442, 500, 539; Comp. Laws Vt. 177; [Dormer v. Packhurst,] 3 Atk. 134; [Murray v. Gouverneur,] 2 Johns. Cas. 441; [Brown v. Storm,] 4 Vt. 37, 45; 1 Gall. 5, [U. S. v. Wonson, Case No. 16,750;] 1 Paine, 559; [Barker v. Jackson, Case No. 989;] [Society for Propagation v. Town of Pawlet,] 4 Pet. [29 U. S.] 509; [Cooper v. Telfair,] 4 Dall. [4 U. S.] 19; [Calder v. Bull,] 3 Dall. [3 U. S.] 386, 395.

J. H. Hubbard, for defendant, cited:

[Dash v. Van Kleeck,] 7 Johns. 477; 2 Inst. 292; [Gillmore v. Shooter,] 2 Mod. 310; [Ogden v. Blackledge,] 2 Cranch, [6 U. S.] 272; [Wilkinson v. Leland,] 2 Pet. [27 U. S.] 627, 657; 2 Gall. 105, [Propagation Soc. v. Wheeler, Case No. 13,156;] [Calder v. Bull,] 3 Dall. [3 U. S.] 386; [Bates v. Kimball,] 2 D. Chip. 77; [Ward v. Barnard,] 1 Aiken, 121; [Staniford v. Barry,] Id. 314; [Town of Bradford v. Brooks, 2 Aiken, 284; [Catlin v. Washburn,] 3 Vt. 36; [Keith v. Ware,] 2 Vt. 174; [Lyman v. Mower,] Id. 517.

Before THOMPSON, Circuit Justice, and PAINE, District Judge.

THOMPSON, Circuit Justice. The defendant recovered, in an action of ejectment, the premises on which the improvements now in question had been made, and the present action is brought under the provisions of a statute of this state to recover the value of such improvements. The plaintiffs were bona fide purchasers, supposing themselves to have a good title to the premises.[2] The improvements were made prior

[2] There is certainly no reason, in general, why the owner of land should be compelled to pay for improvements which he neither directed nor desired, as a condition on which he is to gain possession of his property. But when an occupant has taken possession under a bona fide purchase, and made permanent improvements, it is very hard for him to lose both land and improvements. If the plaintiff is not content with acquiring possession of his property in an

to the act under which the present suit is brought, which bears date on the 15th November, 1820. This act declares that it shall not extend to cases accruing after the passage of this act, and is, therefore, in terms retrospective, and presents the question directly whether this court has authority to declare such law void, and this is the only question involved in the case. By the common law, when the owner recovers his land in an action of ejectment, he is entitled to the possession without paying for any improvements which may have been made upon his land. Such improvements are considered as annexed to the freehold, and to have been made at the peril of the possessor. The civil law, however, in this respect varies from the common law, and, according to the rule which there prevails, a bona fide possessor is entitled to be reimbursed, by way of indemnity, the expenses of beneficial improvements. This would seem to be founded on principles of equity, so far as the actual value of the property is increased by the labor of another. The common law, acting under the maxim of caveat emptor, considered this as too loose a rule, and opening a door calculated to give encouragement to intrusions upon land, without due and proper inquiry into the title. It has, however, been pretty strongly intimated by English chancellors, that when a party is obliged to resort to a court of equity for the recovery of the rents and profits of his land, a bona fide possessor would be allowed to deduct the amount of his actual expenses for beneficial improvements. [Dormer v. Fortescue,] 3 Atk. 134. But this rule, if adopted, ought not to be applied to any case when there was not the most satisfactory evidence that the possession was taken in good faith, and under a full belief that the title had been acquired from the rightful owner.

The law now in question is not repugnant to any express provision in the constitutions of the United States or of the state of Vermont. The only article in the constitution of the United States that can possibly have any bearing upon the question, is that which declares that no state shall pass any ex post facto law, or law impairing the obligation of contracts. Article 1, § 10. This is not an ex post facto law, according to the legal understanding of laws of this description. They relate only to criminal cases and venal statutes. Nor does it impair the obligation of any contract. There is no subsisting contract between these parties which could be

impaired.[3] There is no conflict between the constitution of the state of Vermont and this law. The only provision at all looking to the question is that which declares that the legislative and judicial and executive departments shall be held distinct, so that neither exercise the powers belonging to the other. The subject-matter of this law, if within the legitimate scope of any department of the government, properly belongs to the legislative. It cannot in any sense be considered judicial or executive; and the inquiry is therefore narrowed down to the single question, whether being retrospective in its operation makes it void. As a general and abstract question, the policy and justice of such laws may well be doubted; but how far courts of justice have a right to enter into these considerations, when there is no conflict between the law and the constitution, is a point on which different opinions have been entertained. This court, however, is bound to adopt the view taken of the question by the supreme court of the United States. Although no direct decision upon the point has been made in that court, yet, from what has fallen from the judges on various occasions, when the question has been brought incidentally under consideration, the view evidently taken has been, that the validity of such laws, where no constitutional provision was infringed, did not fall within the province of courts of justice.

This question came under the consideration of the supreme court of the United States, at an early day (1798), in the case of Calder v. Bull, 1 Cond. Rep. 172, [3 Dall. (3 U. S.) 386,] though it was not the point on which the judgment of the court turned. Mr. Justice Chase was of opinion that the courts of the United States have no jurisdiction to determine that any law of a state legislature contrary to the constitution of such state, was void; but that such question belonged to the state courts. What fell from Mr. Justice Paterson in that case, would seem to show that the attention of the convention in the formation of the constitution, was

[3] An act suspending legal proceedings during an actual invasion, is not a law impairing the obligation of contracts. Johnson v. Duncan, 1 Cond. La. Rep. 157. Whether the legislature can rightfully declare that the result of a litigated suit against one person, shall be evidence against another to affect rights of the latter, which had accrued previous to the passage of the statute? Quaere. Wood v. Byington, 2 Barb. Ch. 387. It is not competent for the legislature, by a retroactive statute, to make the opinion of the attorney-general that a contract between the state and an individual, in relation to convict labor, was illegal, conclusive evidence of such illegality, as against the latter. Trustees, etc., v. Lawrence, 11 Paige, 80. But if the contract was in fact illegal, or if it was originally valid, and the contractors had violated it, so as to authorize the state to rescind it, the inspectors of the prison were, under the act of 1842, bound to act upon the opinion of the attorney-general, and to rescind the contract. Id.

improved condition, after he has neglected to assert his title for a number of years, it is certainly equitable that the defendant should be allowed the value of his improvements, made in good faith to the extent of the rents and profits claimed. This view of the subject is fully supported by Green v. Biddle, 8 Wheat. [21 U. S.] 81, 82, and the authorities there cited, especially Coulter's Case, 5 Coke, 30. And see Jackson v. Loomis, 4 Cow. 168.

called to this very subject. He was a member of the convention, and "I had," says he, "an ardent desire to have extended the provision in the constitution to retrospective laws in general. There is neither policy nor safety in such laws. It may be truly said of retrospective laws of every description, that they neither accord with sound legislation, nor the fundamental principles of the social compact." But he did not consider all retrospective laws embraced in the prohibition to the states to pass ex post facto laws: that these words, when applied to a law, must have a technical meaning, and refer to crimes, pains and penalties. Mr. Justice Iredell says, if a government composed of legislative, executive and judicial departments, established by a constitution which imposes no limits on the legislative power, the consequence would inevitably be, that whatever the legislative power chose to enact, would be lawfully enacted, and the judicial power would never interpose to pronounce it void. That if the legislature pass a law within the general scope of their constitutional power, the court cannot pronounce it to be void, merely because, in their judgment, it is contrary to the principles of natural justice.

In the recent case of Satterlee v. Matthewson, (2 Pet. [27 U. S.] 413,) the language of the court is very strong in relation to the powers of the courts of the United States to declare state laws of this description unconstitutional. The objection, say the court, most relied upon is, that the effect of this act was to divest vested rights. There is, certainly, no part of the constitution of the United States which applies to a state law of this description. Nor are we aware of any decision of this court, or of any circuit court, which has condemned such a law upon this ground, provided its effect be not to impair the obligation of a contract. Reference is made to what fell from the chief justice in the case of Fletcher v. Peck, [Case No. 4,865:] That it might well be doubted whether the nature of society and of government do not prescribe some limits to the legislative power; and he asks, if any be prescribed, where are they to be found if the property of an individual, fairly and honestly acquired, may be seized without compensation? But, say the court, it is nowhere intimated in that opinion, that a state statute, which divests vested rights, is repugnant to the constitution of the United States. So in the case of Wilkinson v. Leland, (2 Pet. [27 U. S.] 661,) the court observes: "We cannot say this is an excess of legislative power, unless we are prepared to say, that in a state not having a written constitution, acts of legislation, having a retrospective operation, are void as to all persons not assenting thereto, even though they may be for beneficial purposes, and to enforce existing rights; and we think this cannot be assumed as a general principle by courts of justice.

It may here be remarked, that if the state constitution is entirely silent on the subject, the question stands on the same footing as if there be no written constitution." In the case of Propagation Soc. v. Wheeler, [Case No. 13,156,] a law, similar to the one in question, was decided in the first circuit to be unconstitutional, but it was put on the ground that it was repugnant to the state constitution, which forbade retrospective laws.

That the law of Vermont, now in question, is a retrospective law, cannot be doubted. It impairs vested rights acquired under existing laws; it attaches a new disability in respect to transactions already past, and creates new liabilities. But it is not repugnant to any provision in the constitution of the United States or of the state of Vermont; and this is the sole ground upon which I rest my opinion. Wherever there is a conflict between the law and the constitution, both cannot stand; and it is properly within the province of courts of justice to determine the validity of such a law. But when no such conflict arises, it is matter resting in the discretion of the legislature, who are responsible to the people and are not under judicial control; and although not an advocate for the justice or policy of retrospective laws, I feel less repugnance to the one now under consideration, because similar laws have been in existence in this state almost from its first organization, and having so repeatedly received the sanction of different legislatures, and their validity having been in no manner questioned in the courts of justice, there is reason to conclude that they are satisfactory to the public. We are, accordingly, of opinion that the plaintiffs are entitled to judgment.

[NOTE. In Watson v. Mercer, 8 Pet. (33 U. S.) 88, Mr. Justice Story, speaking for the court, said: "It is clear that this court has no right to pronounce an act of the state legislature void, as contrary to the constitution of the United States, from the mere fact that it divests vested rights of property. The constitution of the United States does not prohibit the states from passing retrospective laws generally, but only ex post facto laws. Now, it has been solemnly settled by this court that the phrase 'ex post facto laws' is not applicable to civil laws, but to penal and criminal laws, * * * which impose punishments and forfeitures, for acts antecedently done, and not to civil proceedings which affect private rights retrospectively." An act passed after the rendition of a judgment in favor of a bank, which authorized the defendant therein to set off against it the circulating notes of the bank which he procured after the judgment, is, as between the bank and the defendant, valid, and does not impair the obligation of the contract sued on, or of the judgment. Blount v. Windley, 95 U. S. 180. An act declaring that acts performed by any two of the tax commissioners shall have the same validity as if performed by all three, though retrospective, is not for that reason unconstitutional. Schenck v. Peay, Case No. 12,451. As to the validity of retrospective laws which divest vested rights, see Charles River Bridge v. Warren Bridge, 11 Pet. (36 U. S.) 540; Baltimore & S. R. Co. v. Nesbitt, 10 How. (51 U. S.) 401. There is nothing

in the constitution which prohibits a legislature from passing an act which divests rights vested by law, provided its effect be not to impair the obligation of a contract. Randall v. Krieger, 23 How. (90 U. S.) 147. A retrospective statute, remedial in its nature, that confirms existing rights by adding to the means of enforcing existing obligations, may be constitutional. Peay v. Schenck, Case No. 12.449; Griffing v. Gibb, Id. 5,819; Schenck v. Peay, Id. 12,451; Satterlee v. Matthewson, 2 Pet. (27 U. S.) 380; Curtis v. Whitney, 13 Wall. (80 U. S.) 68. An act imposing a higher tax on an incorporated bank than that contemplated in its charter is unconstitutional, as impairing the obligation of a contract. Piqua Bank v. Knoop, 16 How. (57 U. S.) 369.]