# The New Orleans and Selma Railroad Co. and Immigration Association *et al. v.* Jones.

### *Statutory Real Action.*

1. *Eminent domain ; compensation to owner requisite to the exercise of right of.*—When lands are sought to be condemned, under any *ad quod damnum* proceeding, the Constitution (Art. I, § 24,) makes the prepayment of just compensation therefor a condition precedent, without which the title of the owner to the land, or any easement therein, is not divested or affected.

2. *Same ; owner of lands may waive pre-payment of compensation for lands taken under right of.*—The owner in such case, may, if he is *sui juris*, waive the right to exact pre-payment of damages by consenting, expressly or by clear implication, to extend a credit to the person condemning, allowing the damages to remain as a debt ; but such waiver is not to be inferred without a clear indication, by words or acts, that the owner will not insist on his constitutional right.

[The N. O. & S. R. R. Co. and Im. Ass'n et al. v. Jones.]

3. *Same; when owner of lands estopped from demanding pre-payment of damages for lands taken under exercise of right of.*—When, however, the owner has knowledge of the fact that a company is proceeding to locate and construct their road on his land and allows them to expend large sums of money in improvements for this purpose, without interfering or forbidding them to proceed, he is estopped from evicting them by ejectment.

4. *Ejectment; when l**** owner may maintain against railroad company taking land without condemnation.*—The unauthorized entry of a railroad company by its agents on another's land without the statutory proceedings for condemnation, unless perhaps for a survey or like steps of incipient acquisition, is a trespass, rendering them liable to be sued at law just as other wrong-doers may be; and when in such case, the company alone can carry the statutory proceedings into effect, the owner may maintain ejectment.

5. *Statutory real action; may be maintained under the facts of this case.*—When, as in this case, it is shown that the agents of the railroad company entered on plaintiff's land, without resorting to the statutory proceedings for condemnation, which it alone could exercise, and without the consent of any one authorized to give it, but against the protest of her guardian (plaintiff being a minor), that when she became of age the road was constructed and no improvements were made on the land afterwards, the plaintiff had a right to rely on the dissent of her guardian, the defendant was not prejudiced by her silence, and the statutory real action is clearly maintainable.

6. *Adverse possession; who not entitled to improvements on suggestion of, under the statute.*—A mere naked trespasser can not claim the benefit of the statute (Code, §§ 2951–2,) allowing the defendant the benefit of the value of permanent improvements on a suggestion of three years adverse possession; the statute is applicable only when there is an occupancy in good faith under color or claim of title.

7. *Dedication of land as public highway; when presumed.*—The mere acquiescence by the owner in the use of his land as a public highway, for any period short of twenty years, does not create a presumption of dedication, unless a purpose to do so is indicated clearly and unequivocally.

8. *Same; facts in this case do not show.*—When the facts relied on to show a dedication consist of proceedings in partition in which the location of the road was shown, and the land divided with reference to it as a boundary line, such acts can not be construed as a gift or abandonment of the land to use as a highway.

APPEAL from Selma City Court.

Tried before Hon. JNO. HARALSON.

This was a statutory real action brought March 4, 1879, by Sallie A. Jones, against Frank G. Ellis, to recover certain lands which were described in the complaint. The New Orleans and Selma Railroad and Immigration Association was, on motion, permitted to come in and defend, as landlord, the possession of its tenant, Ellis. The defendants filed three pleas, in the first and second of which they denied possession of the land sued for, except a strip of the uniform width of one hundred feet constituting the right of way on which the railway of defendant was located, and as to this right of way they pleaded "not guilty." The third plea averred that the railroad company was, by virtue of its charter and the

(4)

[The N. O. & S. R. R. Co. and Im. Ass'n et al. v. Jones.]

statutes of the State, invested with the right to enter on plaintiff's land and locate and construct their railroad; that in 1870, with the knowledge, acquiescence and consent of the plaintiff and her guardian, said company entered on said land, constructed its railway thereon, and put the same in operation; that the plaintiff consented that the railroad constructed on said strip of land should be and remain the property of the defendant corporation, and subject to its use without limit as to time; and thereupon the said railroad became, and was, and has ever been, and is now, a public highway under the Constitution and laws of Alabama; that said company has ever since been in the undisputed possession of said strip of land (but of no other part of the land sued for), and has ever since carried on its business as a common carrier over, along, and by means of said public highway. The plaintiff demurred to this plea: 1. Because it did not appear that the railroad company entered, or constructed its railroad on said land with the consent of the plaintiff or any one authorized to give it. 2. Because the plea shows that the plaintiff was a minor when such consent was given. 3. The plea does not show that the railroad company ever paid any compensation for the land. 4. It appears from the plea that said company appropriated the lands without paying any compensation to the plaintiff or instituting any proceedings to have the damages assessed. 5. Because the plea shows that the company entered on the lands wrongfully and unlawfully, and so holds the same. The court sustained this demurrer. There was also a suggestion upon the record that the defendants had been in adverse possession of the land for three years next preceding the commencement of the suit. On the trial it was shown that, prior to 1870, plaintiff had inherited and owned an undivided half interest in the land across which the railroad of the defendant corporation was located; that her brother, Drury F. Jones, owned the other half interest until his death, when it descended to plaintiff; that said lands were partitioned between plaintiff and her brother in a cause in the Chancery Court of Dallas county; that said partition was made on a petition filed by plaintiff in said cause; that a map of said lands was made and constituted a part of the record in said cause; that this map designated the location of the railroad, and the land was partitioned with reference thereto, all of the land lying north of the railroad was allotted to plaintiff, and all the land south of it to Drury F. Jones; that these proceedings were ratified and confirmed by said court, and that plaintiff had never dissented from the partition or any of its terms, but took possession of the land lying north of the rail-

road, and her brother took possession of the land lying south of it.  A. M. Rixey, who, in 1870, was the guardian of the plaintiff in the right of his wife, testified that a working party in charge of one Griffin, began work on the construction of said railroad across said parcel of land about three hundred yards from the residence of the witness; that he spoke to Griffin about stopping or not going on until the damages were arranged, and forbade him to do so; that Griffin referred him to Mr. Dupuy, the contractor; that he saw Dupuy, who said he would see about it; that shortly afterwards the work was resumed on the land; that he again saw Griffin about it, and was told by Griffin that he had been ordered to go on; that he did not know who were the president and directors of the company, and made no objection to them, and that he did nothing else about it.  The defendant, Ellis, testified that he had been connected with the company, and had known about its affairs since July 25, 1875; that since its construction, by Dupuy, witness had been in possession and control of it; that it had been continuously operated during that time; that he believed all the time that the company had the right of way over the land sued for, and that no claim to the contrary had ever been made on him by any one, nor had he heard of any such claim until this suit was begun. The quantity of land was then shown, and the value of the rents, and of the permanent improvements put on it by the defendant corporation.  The charter of the company (Acts 1865–6, 236,) and the amendments thereto (Acts 1868, 428,) were then put in evidence by the defendants, who also introduced evidence showing that the land in controversy was unenclosed; that the railroad ran near a public highway, and for a third of the way across the land parallel with, and partly within the limits of said highway; that the plaintiff, her brother, and their successive guardians lived in sight of the railroad where it passes on said land, saw the work going on, and that no objection was ever made at any time except as testified to by the witness Rixey.  The court, the case having been tried without a jury, found: 1. That the land belonged to the plaintiff, and the railroad company entered on it as a trespasser; that it had acquired no title to the land or right of way, and plaintiff was entitled to recover the strip of land one hundred feet wide.  2. That plaintiff had not waived her right to sue in the case, nor dedicated the land to use as a highway.  3. That the suggestion of adverse possession was untrue; and defendants were not entitled to compensation for improvements.  4. That execution should be awarded against both defendants for possession of the land.  5. That plaintiff was entitled to rent (calculating it).

The court rendered judgment in accordance with these findings, and the defendants severally and separately excepted to its rulings, which are the errors assigned.

BROOKS & ROY, for appellants.

WHITE & WHITE, for appellee.

SOMERVILLE, J.—The Constitution of 1868 (Art. I, § 25) provided that "laws may be made securing to persons or corporations the right of way over the lands of either persons or corporations, and for works of internal improvement, the right to establish depots, stations and turnouts, but just compensation shall, in all cases, *be first made to the owner.* The Constitution of 1875 seems still more explicit in engrafting this principle of previous compensation upon the exercise of the right of eminent domain (Art. I, § 24), a caution which is probably attributable to the doubts entertained as to the proper construction of the clause in the Constitution of 1819, relating to the same subject.—*Sadler v. Langham,* 34 Ala. 311.

Under this clause, it is too evident to require argument that pre-payment of just compensation to the owner of any lands, sought to be condemned under any *ad quod damnum* proceeding, is made a condition precedent, without which the title of the owner to the land, or any easement in it, is not divested, or in any manner affected.—Mills on Eminent Dom. § 130; *Provolt v. Railroad Co.* 57 Mo. 256; *Stacy v. Ver. Cent. R. R.* 27 Vt. 39.

The owner, if *sui juris,* may of course waive his right to exact the pre-payment of damages, by consenting expressly or by clear implication, to extend a *credit* to the condemning corporation or party, allowing the damages to lie and remain as a mere debt. But such waiver is not to be inferred, without words or acts of acquiescence on the part of the owner clearly indicating a purpose not to insist on his constitutional right.—Cooley's Const. Lim. 181, 561–2; *Brown v. Worcester,* 13 Gray, 31. Where, however, a plaintiff has knowledge of the fact that a company is proceeding to locate and construct their road upon his land, and he allows them to expend large sums of money in improvements for this purpose, without interfering or forbidding them to proceed, he would no doubt be *estopped* from undertaking to evict them by an action of ejectment.—*Trenton, &c. Co. v. Chambers,* 9 N. J. (Eq.) 471; *McAuly v. West Ver. Railway,* 33 Vt. 311.

But the unauthorized entry of a railroad company, by its agents, upon another's land, without any proceedings of con-

demnation as provided by the statute, unless perhaps in the case of preliminary occupation temporarily for a survey, or other like steps of incipient acquisition, is a *trespass*, for which they are liable to be sued at law, as other like wrong-doer may be. It is maintained by many respectable authorities that, in all such cases, even when the statute furnishes a remedy to the land owner for the assessment of damages, he is not compelled to institute proceedings, but may rely upon his constitutional protection, and may, if he has not waived pre-payment, maintain ejectment against the company. *Daniels v. Chicago & N. Railroad Co.* 35 Iowa, 129 ; 14 Amer. Rep. 490 ; *Smith v. R. R. Co.* 67 Ill. 191 ; *M. & C. R. Co. v. Payne*, 37 Miss. 700 ; Mills on Em. Dom. § 130. But where the company alone have power to carry the statutory remedy into effect, and have entered upon the owner's land without condemning it, and without his consent, the remedy of ejectment clearly lies, without question, according to all the authorities.—Pierce on Amer. R. R. Law, p. 230; 1 Redf. Law Railways, 335; *Daniels v. Chicago & N. Railroad Co.* 14 Amer. Rep. 490 (*supra*).

In this case, the agents of the appellant company entered upon the lands of the appellee and constructed their road over them, not only without the consent of any one authorized to give it, but against the protest of the guardian of the appellee, who was then a minor. When the appellee became of age, in 1875, the work of construction was complete, and between that time and the bringing of this suit, in March, 1879, no work of improvements is shown to have been done on the lands in question. The company was not, therefore, prejudiced by her silence ; she had a right to rely upon the previous dissent of her guardian ; there was nothing requiring her disaffirmance on becoming of age, and no time would bar her right of action except a period sufficient to make good the plea of the statute of limitations. Neither the general law, nor the charter of the company, authorized any proceeding on the part of any one, except the company, to condemn the land and have a jury to award an assessment of damages as a compensation.—Code of 1876, § 3580 *et seq.;* Acts of 1865–66, pp. 236, 239, §§ 11–12. We think, therefore, that this is a clear case for the ordinary statutory action in the nature of ejectment.

The defendant in the court below (who is here the appellant,) suggested upon the record an *adverse possession* for three years next before the commencement of this suit, as authorized in such actions for realty by section 2951 of the Code of 1876, and claimed by way of set-off against the rents

[The N. O. & S. R. R. Co. and Im. Ass'n et al. v. Jones.]

for the value of the permanent improvements made by the company on the plaintiff's lands during occupancy.

The rulings of the court raise the question whether a mere *naked trespasser* can claim the benefit of this statutory provision, or whether one can only do so whose occupancy is under such color or claim of title as to be in *good faith*.

It is forcibly argued that the statute of limitations to real actions may be sustained without any reference to the *bona fides*, or color of title, under which the adverse holder claims ownership, as held by this court in *Smith v. Roberts*, 62 Ala. 83, and other cases there cited; and that the same rule ought, in reason, to apply here. And we admit that this argument is strengthened by invoking section 2966 of the Code, which is in *pari materia*, and expressly requires "a possession under color of title, in good faith," by a defendant, as a *sine qua non* to any acquittal of responsibility for rents accruing during his adverse occupancy. We think a strict adherence to sound rules of construction would authorize the adoption of this meaning of the statute as the one most probably intended, but we do not consider it an open question in this State. The same phrase—"adverse possession"—occurred in the act of 1836, "for the relief of tenants in possession against dormant titles," as found in Clay's Dig. 320, §§ 47-48, and was construed by this court in *Lamar v. Minter*, 13 Ala. 31. That statute and the present provisions of the Code are similar in substance and purpose, and both contain the identical phrase now under consideration. It was held in the above case, to mean an occupancy that was *bona fide*, and this would be true whether under color or claim of title. The adoption of the Codes of 1852, 1867, and 1876, each of which contain this phrase, must, according to a well settled principle, be considered as an adoption by the legislature of the construction placed upon it by the judiciary, (*Ex parte Matthews*, 52 Ala. 51).

It has, besides, become a rule of property, having prevailed, as such, in this State for over thirty years, and this is another cogent reason why we do not feel authorized to depart from it, or overrule it.—(Cooley's Const. Lim. 50-51).

There is, futhermore, manifest justice in such a rule. The reckless or careless intruder upon the lands of another, or one holding possession fraudulently, or *mala fide*, is not, in justice, entitled to compensation for any improvements made during the period of his wrongful possession. This right to set-off improvements in reduction of rents recoverable by the plaintiff, is an equitable one, borrowed originally from the civil law by courts of chancery, and afterwards adopted gradually by courts of law upon principles of analogy and a

sound public policy. It never prevailed in the earlier history of the common law, such improvements being regarded as made at the peril of every possessor of the freehold. In *Putnam v. Ritchie*, 6 Paige, 390, recognized as a leading case on this subject in this country, Chancellor Walworth said: " I have not, however, been able to find any case, either in this country or in England, wherein the court of chancery has assumed jurisdiction to give relief to a complainant, who has made improvements upon land, the legal title to which was in the defendant, where there has been neither fraud nor acquiescence on the part of the latter after he had knowledge of his legal rights." It is not to be lightly assumed that the legislature intended to sweep away a principle so manifestly just in itself, and so fundamentally imbedded in the principles of our jurisprudence.—2 Kent's Com. 334 ; *Jackson v. Loomis*, (4 Cow. 168) ; 15 Amer. Dec. 347 ; (and *note* on page 349-354) ; *Horton v. Sledge*, 29 Ala. 478 ; *Green v. Biddle*, 8 Wheat. 1 ; *Patrick v. Marshall*, 2 Bibb, 40 ; 3 Waits Act. & Def. 133.

A mere permissive enjoyment of land, furthermore, or of an easement thereon, has been held not to confer any adverse right. The claim must be of the entire title, exclusive of the title of any other person.—*Smith v. Blertis*, 9 John. 180 ; *Kirk v. Smith*, 9 Wheat. 241 ; *Medford v. Pratt*, 4 Pick. 222 ; *Plimpton v. Converse*, 44 Vt. 158.

We think the demurrer of the plaintiff to the plea suggesting " adverse possession" was properly sustained.

It is further insisted by the appellant's counsel that there has been a dedication of the land in question to the use of the railroad, which is a public highway.

The principle has long been settled by this court, that the mere fact of acquiescence on the part of the owner in the use and enjoyment of his land, as a public highway or road, will not create a presumption of dedication within any period short of twenty years, without some clear and unequivocal act on his part explicitly indicating such purpose of dedication.—(*Hoole v. Attorney-General*, 22 Ala. 190.) This may be effected without any grant or conveyance by deed or other writing on the part of the owner of the land, (2 Smith, Lead. Cas. 5 Amer. Ed. 209), and when once done is irrevocable. (Wash. on Eas. & Serv. 134). The act insisted on here, as constituting an implied dedication by the appellee, and her deceased brother, Drury Jones, from whom she derives title by inheritance, is a certain proceeding which took place in the chancery court in April, 1876, by which a partition of the land was made between them as tenants in common. In these proceedings the existence and location of the appellant's road was referred to by name, and the land was partitioned so

[Lumpkin v. The State.]

that all "lying *North* of the New Orleans & Selma railroad was allotted and set apart to the plaintiff," and all "lying *South* of said railroad was set apart to the said Drury F. Jones." This partition was confirmed by the decree of the probate court, and ratified by the parties, and a map representing the railroad as a boundary line between the two tracts was referred to and recorded.

We do not think these proceedings can fairly be construed into gift or abandonment of the right of way to the railroad company. Reference is made to the line of the road merely as a convenient means of describing the land, and designating its geographical boundary, as is frequently, if not always, done to streams or rivers which constitute the intermediate boundaries between lands of adjoining owners. Where land is granted by deed and bounded in this way, the grant extends to the middle of the stream if unnavigable, or of the road as the case may be, unless the contrary is plainly expressed.—Walker's Amer. Law, (7th Ed.), 300; *Hoole v. Attorney-General*, 22 Ala. 190, (*supra*).

The rulings of the court below were in accordance with these principles, and its judgment is affirmed.