# Turnipseed *v.* Fitzpatrick.

*Statutory Real Action in the Nature of Ejectment.*

1. *Decree of sale of lands for distribution; jurisdiction of judges of probate to render.*—The jurisdiction of judges of probate to decree, under the statute, the sale of lands held by joint owners or tenants in common, for distribution, when the same can not be equitably partitioned or divided (Rev. Code, § 3120; Code, 1876, § 3514), is limited to lands lying, in whole or in part, in the county in which the application is made; and hence, a decree of sale of lands, no portion of which lies in the county in which the proceedings are had, is void, and a sale and conveyance made thereunder do not work a divestiture of title.

2. *Allotment of homestead to widow and children of decedent under § 2061 Rev. Code; when fatally defective.*—Proceedings had in the probate court for the allotment of a homestead to the widow and children of a decedent, under subdivision 6 of section 2061 of Revised Code, authorizing the appointment of three appraisers to lay off and set apart five hundred dollars worth of land, etc., are fatally incomplete, when it is not shown by the record that any report was made by the appraisers, or, if made, was ever, in any form, judicially passed on by the court.

3. *Dower; jurisdiction of probate court to assign.*—The probate court is without jurisdiction to assign dower in lands, no portion of which lies in the county in which the proceedings are had; and such jurisdiction is not conferred by a special act of the General Assembly, removing the administration of the husband's estate from another county, and clothing the court with jurisdiction to settle and distribute it.

4. *Same; character of before assignment.*—The widow's right of dower, before assignment, is purely equitable, not cognizable at law, and confers on her no specific estate or interest in the lands which she can sell or assign to another; and hence, a purchase of such right is no defense against ejectment brought by the heirs against the purchaser, nor does it entitle him to any reduction of rents.

5. *Ejectment; rents and improvements on suggestion of adverse possession for three years, when possession under color of title, in good faith.* The provisions of section 2966 of the Code, limiting a recovery of mesne profits in real actions to damages or rent for one year prior to suit brought, as against a defendant holding possession under color of title, in good faith, do not apply to cases in which the defendant seeks to obtain the benefit of permanent improvements erected on the premises by him, on a suggestion of adverse possession for three years, under sections 2951–4 of the Code; but, in such case, a new equity is created by the statute in favor of both parties, and the defendant is allowed *full value* for his improvements, and the plaintiff *full rent* for his land.

APPEAL from Bullock Circuit Court.

Tried before Hon. H. D. CLAYTON.

This was a statutory real action in the nature of ejectment, by Bird and James Fitzpatrick against D. C. Turnipseed, to recover a tract of land situate in the county of Bullock, in this State; and was commenced on 18th March, 1882. The defend-

[Turnipseed v. Fitzpatrick.]

ant pleaded not guilty, and also suggested upon the record " that he had been in the adverse possession of the land sued for, for more than three years next before the commencement of this suit, claiming the same as his own, and that he had made valuable improvements thereon." · The trial resulted in a verdict and judgment in favor of the plaintiff for the lands described in the complaint; the jury, by their verdict, finding the suggestion of adverse possession to be true, and assessing " the value of the improvements at $1263, the value of the lands at $1149.50, and the value of the use and occupation at $750."

As shown by the evidence, Bird Fitzpatrick, sr., departed this life, intestate, in the year 1864, a resident of Pike county, in this State, seized and possessed of the lands sued for, and leaving him surviving Mrs. M. A. Fitzpatrick, his widow, and the plaintiffs, his only children and heirs at law. The plaintiffs, claiming title by descent from their father, rested their case after proving his seizin, their heirship, and the rental value of the lands. As shown by the evidence introduced on behalf of the defendant, on 6th December, 1864, B. H. Fitzpatrick and the said M. A. Fitzpatrick were appointed by the probate court of Montgomery county administrator and administratrix of said decedent's estate. This appointment was made under a special act of the General Assembly, the provisions of which, as copied in the bill of exceptions, are, that said court " shall have authority to take jurisdiction of the administration " of said estate, " to grant letters of administration thereon, and to do and perform all things necessary or proper to cause the estate of said decedent to be settled and distributed in accordance with the laws of this State, as fully and effectually as if the said decedent had been a resident citizen of said county of Montgomery at the time of his death." B. H. Fitzpatrick having died in 1867, Mrs. Fitzpatrick reported said estate insolvent, and, on such report, in May, 1868, it was duly declared insolvent; and, in 1869, it was finally settled by Mrs. Fitzpatrick, who had been continued as administratrix after the declaration of insolvency. On the settlement, however, the claims of creditors which had been filed and allowed, were paid in full, leaving a balance, which was distributed among the distributees. In May, 1868, under the decree of the probate court of Montgomery county, and on the petition of Mrs. Fitzpatrick, as administratrix of said estate, dower in the lands of said decedent was allotted and set apart to her, consisting of a part of the lands sued for in this action. The lands out of which dower was claimed, are described in the proceedings as situate in the counties of Bullock and Pike. About the same time, Mrs. Fitzpatrick made application to said court on behalf of herself and the plaintiffs, the latter then being minors, to

[Turnipseed v. Fitzpatrick.]

have laid off and set apart, as exempt from administration and the payment of decedent's debts, lands to the value of five hundred dollars, under the provisions of the statute then embodied in section 2061 of the Revised Code. Upon this application, an order was made, reciting that it appeared to the satisfaction of the court that "said Fitzpatrick died leaving the said M. A. Fitzpatrick as his widow, and Bird and James F. Fitzpatrick, both minors under twenty-one years of age, members of his family, and that the estate of the said Bird Fitzpatrick is insolvent, and it is necessary to sell the real estate thereof for the payment of debts;" and ordering and decreeing that "the prayer of the petition be granted," and that three named persons be appointed appraisers, etc. The transcript from the records of the probate court, exhibited with the bill of exceptions, fails to show that the appraisers ever acted under said appointment, or that any other proceedings were had on said application. One of the appraisers named in said order was, however, examined as a witness by defendant, and he testified, in substance, that the appraisers did act under said appointment, and laid off and set apart to said widow and children, as exempt, the lands sued for, except the lands which had been previously assigned to the widow as dower; and that said appraisers wrote out and signed a report of their said action, which was left with one of their number to be returned to court; "but witness can not say whether or not it was so returned."

As the defendant's evidence further showed, in 1872, C. Tompkins, as guardian of the plaintiffs, appointed by the probate court of Pike county, filed a petition in said court, averring that his wards and Mrs. Fitzpatrick were joint owners or tenants in common of the lands sued for, that the lands could not be equitably partitioned or divided without a sale, and that a sale thereof would be to the interest of his wards; and praying that the lands might be sold for partition or division. The court, for the purpose stated in the petition, decreed a sale of the lands, and appointed commissioners to execute the decree, who, on 26th August, 1872, sold the lands, at public outcry for cash, the defendant becoming the purchaser, collected the purchase-money, and reported their action to the court; and thereupon a conveyance was executed, under the orders of the court, conveying said lands to the defendant, and the purchase-money was distributed among the plaintiffs and said widow. The defendant took possession of said lands under his purchase on 1st January, 1873, and has since continued in the possession thereof, claiming and holding them as his own.

The defendant also introduced evidence tending to show that, " during his occupancy of said lands under said deed, and prior

[Turnipseed v. Fitzpatrick.]

to the commencement of this suit, he had made valuable and permanent improvements upon the same in the way of ditching and clearing up the same," the value of which is stated. The defendant's suggestion of adverse possession was admitted to be true, and it was agreed that the jury should so find. The bill of exceptions purports to set out all the evidence, the substance of which is here given.

The court charged the jury, *ex mero motu*, among other things, (1) that " if they believed the evidence, the title to the land sued for, or to any portion of it, had never been ·divested out of plaintiffs ;" (2) that " in assessing the value of the use and occupation of the lands, the jury must assess the value of such use and occupation during the whole period of defendant's occupancy of the same ;" and (3) that in ascertaining the value of such use and occupation, they " must assess the value of the use and occupation of the whole lands."

The court also charged the jury, at the plaintiffs' written request, that if they believed the evidence they must find for them for the lands sued for ; and refused the following, among other charges requested in writing by the defendant : In substance, that the widow was entitled to one-third of the rents of the lands sued for ; and, in ascertaining the rents which the plaintiffs are entitled to recover, " the jury can only find for them for two-thirds of the rent of the whole premises."

The defendant duly reserved exceptions to the rulings of the court in instructing the jury, above noted ; and those rulings are here assigned as error.

H. C. TOMPKINS and WATTS & SON, for appellant.

DAVID CLOPTON and JAMES WEATHERLY, *contra.*

SOMERVILLE, J.—The title of the plaintiffs to the lands in controversy, which they claim by inheritance as the heirs at law of Bird Fitzpatrick, deceased, is unquestionably good, unless it has been divested by some one of the several proceedings in the probate court, which are relied on by the defendant for this purpose. These defenses we proceed now to consider.

In the first place, we have no hesitation in deciding that the proceedings in the probate court of Pike county, in the year 1872, decreeing a sale of these lands for distribution among the joint owners, or tenants in common, under the provisions of section 3120 of the Revised Code, of 1867, did not operate as a divestiture of the plaintiffs' title. The probate judge of Pike county was without jurisdiction to order the sale, for the reason that the lands were not situated in that county, but in the

[Turnipseed v. Fitzpatrick.]

county of Bullock.   We are of opinion that judges of the several probate courts in this State have jurisdiction to sell lands for *distribution*, under this section of the Code, only where the whole or a part of the land designated to be sold, lies in the county where the application is made, and the particular jurisdiction is sought to be exercised.   The statute does not so declare in express words, but it was clearly intended to be taken *in pari materia* with analogous proceedings for the partition of real estate, and other property, authorized by section 3105 of the Revised Code, or, more properly speaking, originally by sections 2677 *et seq.* of the Code of 1852, relating to the partition of lands.   These sections require the application to be made to " the judge of probate of *the county in which the property is.*"—Code, 1867, § 3105 ; Code, 1852, § 2677 ; Code, 1876, §§ 3497, 693.

These statutes at first had reference only to real estate, and did not, as now, include the partition of personal or mixed property.   The rule of the common law was, that actions affecting real estate were regarded as local, and were required to be instituted in the county in which the premises were situated. And this distinction between the *venue* in transitory and local actions was applicable as well in courts of equity as of common law.   The theory of the law was, that local actions, being in the nature of suits *in rem*, should be " prosecuted where the thing on which they were founded was situated."—*Casey v. Adams*, 102 U. S. 66 ; Trial of Titles (Sedg. & Wait), § 465.   " An action is local, if all the principal facts on which it is founded be local."—Stephen on Pl. (Tyler) 274.   The present proceeding, at least so far as it affects real estate, is local in its nature, and it would require a very obvious expression of legislative intention to authorize us to conclude a purpose on the part of the General Assembly to discard a principle so salutary in its operation and ancient in its authority.   The uniform practice, moreover, so far as we are advised, has been for the several probate judges to exercise the jurisdiction in question only within their respective counties, where the land is situated, whether in cases of application for partition or sale for distribution.   It would be a practice full of injustice and evil results to permit probate judges, holding their courts upon the banks of the Tennessee river, to render decrees ordering the sales of land situated hundreds of miles away in counties contiguous to the Gulf.

We are clearly of the opinion that the probate judge of Pike county was without jurisdiction to order the sale, and the proceedings under the application made before him for this purpose were void.—*Robertson v. Bradford*, 70 Ala. 385 ; *Allen v. Kellam*, 69 Ala. 443 ; *Landford v. Dunklin*, 71 Ala. 594.

[Turnipseed v. Fitzpatrick.]

The widow and children of the decedent, under whom the defendant claims title, acquired no title or interest in the lands by virtue of the attempted allotment of a homestead to them, under the proceedings inaugurated by her, as administratrix of her husband's estate, in the year 1868, in the probate court of Montgomery county. Her application was made under section 2061 of the Revised Code of 1867, subd. 6. This section authorized the appointment of three appraisers, whose duty it was " to lay off and set apart" five hundred dollars' worth of land, including *the homestead*, " or such portion thereof as could be selected without injury to the remaining portion of the estate." If this could not be done, the appraisers were required to lay off *other* lands, setting them apart by metes and bounds. In the event of its being impracticable to so divide the lands of the decedent as to set apart five hundred dollars worth, the widow and children were declared entitled to " five hundred dollars of the *proceeds* of sale."—Code, 1867, § 2061, subd. 6. The proceedings under this statute, so far as they appear in the record before us, are fatally incomplete. While they show an application filed, invoking the jurisdiction of the probate court, and the appointment of three persons as appraisers, they fail to show that these appraisers *ever made any report of their action to the court*, or that such report was ever judicially acted upon in any form whatever. The "selection" required to be made by these agents of the law was obviously incomplete until it was brought to the knowledge of the court in the manner required by the statute,—which was by written report—and there was some judicial action upon it. We can not be permitted to surmise, from parol testimony, that a selection was practicable, or that the court might not have deemed the applicants entitled to the proceeds of the sale in lieu of the land itself, this being an alternative relief authorized by the statute, to be adjudged in a specified contingency, the non-existence of which can not be presumed in the absence of record evidence positively affirming its truth.

So we are equally clear in the opinion that the probate court of Montgomery county possessed no jurisdiction to assign dower to the widow in the lands in controversy. These lands being situated in the county of Bullock, this jurisdiction resided only in the probate court of that county. The statute regulating the subject expressly declares that, when the dower interest can be assigned by metes and bounds, as is claimed to have been done in the present instance, the petition is required to be made to the judge of probate of the county in which the land lies, or a portion of it, in which the assignment of dower is proposed to be made.—Code, 1867, § 1631; Code, 1876, § 2239.

[Turnipseed v. Fitzpatrick.]

The fact that the probate court of Montgomery county had jurisdiction of the settlement of the decedent's estate, by virtue of the special act of the legislature introduced in evidence, does not change the foregoing principle in the least. This act, which was approved October 3rd, 1864, operated only to confer upon the probate court of Montgomery the same jurisdiction to settle and distribute the decedent's estate as if he had been a resident of that county at the time of his death. This was required to be done, by the terms of the act itself, "in accordance with the laws of this State."—Pamph. Acts, 1864, pp. 27, 28. The laws of the State required petitions for the assignment of dower to be made to the probate judge of the county where the land, or a portion of it, was situated. The special act, so far from being repugnant to the general law, was an express affirmation of it.

The widow's right of dower, before assignment, was purely an equitable right, and conferred on her no specific estate or interest in the lands which she could sell or assign to another. *Barber v. Williams*, 74 Ala. 331. The right to rents, or mesne profits, in a court of law would follow the legal title, when coupled with the right of possession. The purchase by the defendant of the claim for unassigned dower from the widow did not entitle him to any reduction of rents in the present action, and the court properly so ruled. Before admeasurement, the claim of dower was one of which a court of law would take no cognizance in an action of ejectment, when set up by the widow's grantee claiming by purchase from her. Trial of Title to Land (Sedgw. & W.), § 129.

The evidence shows that the defendant made a suggestion upon the record of an *adverse possession* for three years next before the commencement of the suit, and asserted compensation for certain permanent improvements constructed by him, during his *bona fide* occupancy of the premises. This was under the provisions of sections 2951–2954 of the present Code of 1876, formerly embraced in the Revised Code of 1867, as sections 2602–2604. It is not denied that these provisions are applicable in cases where possession in good faith is held adversely under either color or simple claim of title.—*N. O. etc., R. R. Co. v. Jones*, 68 Ala. 48. The court, however, charged the jury that in ascertaining by their verdict the value of the use and occupation of the land, they should compute it for the whole period of such occupancy, and that there could be no acquittal of rents for the period of possession prior to one year before the commencement of the suit, under the provisions of section 2966 of the Code (1876). The latter section declares that "persons holding possession [of lands] under *color of title*, in good faith, are not responsible for damages or rent for more.

than *one year* before the commencement of the suit." It is
admitted that the defendant was in possession of the land sued
for, holding in good faith under a deed which constituted color
of title. The contention is, that the latter section must be con-
strued to trench on the former so as to create an exception in
favor of occupants holding under color of title, operating to
acquit them of all responsibility for rents, except such as ac-
crued within one year before the commencement of the suit.

The general rule of damages in real actions in this State is,
to allow mesne profits during the entire period of the defend-
ant's unlawful detention up to the day of trial. And the same
rule is made to apply, by the statute, in all actions for use and
occupation as well as those instituted for the possession of
lands.—Code, 1876, § 2957 ; 1 Brick. Dig. p. 634, § 151. The
only exception is, (1) in favor of tenants in possession, claim-
ing under a lease from some third person, who are not liable for
rent beyond that in arrear at the time of suit brought, and such
as may accrue during the continuance of their occupancy
(Code, § 2965); and (2) "in favor of persons holding posses-
sion under color of title in good faith," against whom the
plaintiff is limited in recovery to one year prior to suit brought.
Code, § 2966. It is our judgment that these latter sections
have a scope of operation which does not encroach upon the
field intended to be assigned to the other sections having refer-
ence to improvements made under three years adverse pos-
session.—Code, §§ 2951–2954. Each has its own area of
operation. In actions of ejectment, or analogous actions for
realty *generally* under the statute, if the defendant holds under
*color of title* in good faith, this fact may be shown under the
general issue, and the result is to diminish the recovery of dam-
ages or rent to the extent specified. But where there has been
three years adverse possession, and improvements of a perma-
nent character have been made, a new equity is made to spring
into existence in favor of both parties. The defendant is al-
lowed *full value* for his improvements, and the plaintiff *full
rent* for his land—the one being adjusted by way of equitable
set-off against the other. This was the more liberal rule of the
civil law, and differs essentially from the rule prevailing in
courts of equity, and to some extent adopted by courts of law,
which allows a defendant compensation for improvements or
ameliorations made in good faith only in mitigation of dam-
ages, and in no case to exceed the value of the rents and profits
claimed by the plaintiff.—*N. O., etc., R. R. Co. v. Jones*, 68
Ala. 48 ; s. c. 70 Ala. 227 ; *Hollinger v. Smith*, 4 Ala. 367 ;
*Jackson v. Loomis*, 4 Cow. 168 ; s. c. 15 Amer. Dec. 349,
*note ;* Tyler on Eject. 848–49 ; Taylor's Land. & Ten. §§ 698,
711. The principle in itself is purely an equitable one, in-

[Turnipseed v. Fitzpatrick.]

tended to do exact justice to both parties litigant by mitigating the rigor of the ancient common law rule, which regarded all improvements as annexed to the freehold and passing with the recovery of the legal title, and being therefore made at the peril of the party constructing them.—*Parsons v. Moses*, 16 Iowa, 444; *Jackson v. Loomis, supra.* This fact must be kept in view as a proper guide in the ascertainment of the legislative intention. It is obvious that the chief purpose of section 2966, which is an independent and not a strictly amendatory statute, was to quicken the diligence of plaintiffs, by discouraging *laches* in the claim of rents as against all innocent occupants holding under proper titles.

The latter section, it is true, has been held applicable by analogy to suits in chancery, in the nature of equitable ejectment, where the defendant sets up a claim to compensation for improvements under the general rule prevailing in courts of equity. This was so declared in *Ormond v. Martin*, 37 Ala. 598, and more recently in *Dozier v. Mitchell*, 65 Ala. 511. The distinction is manifest on reflection. The policy of reducing the recovery of rents, so as to limit them to *one year* prior to suit brought, is in perfect harmony with the rule in equity, which never allowed the recovery of improvements beyond the rents charged, or except in mitigation of rents. But the sections of the Code under consideration go further, and allow to the defendant full compensation for improvements, and prohibit a writ of possession to issue in favor of the plaintiff where the value of the improvements exceed the value of the rents, except on the condition precedent to compensation.—Code, § 2953. If, in cases of the latter character, the recovery of rents should be limited, without any corresponding reduction in the value of improvements, the equitable feature of the statute would be entirely abrogated, and its main purpose be thereby defeated, which is to appropriate accumulated mesne profits, or occupation rent to pay for beneficial, permanent improvements.

The court did not err, in our opinion, in the instruction given to the jury, authorizing them to allow for use and occupation during the entire period of the defendant's occupancy. Holding under color of title would not operate, in a court of law, to abate the rents under the influence of section 2966 of the Code.

We need not consider whether the plaintiff was entitled to recover in this action for the value of the house alleged to have been removed from the premises by the defendant. The special finding of the jury, as shown by the judgment entry, makes it affirmatively appear that no allowance was made for this alleged act of voluntary waste.

The judgment of the circuit court must be affirmed.