SMITH vs. MUNDY.

1. The sale of land by a Sheriff, under an execution, the return day of which has passed, is void, and confers no title on the purchaser.
2. If one, having the legal title to land, induces another to purchase it under execution against him, he is not thereby estopped in a court of law from showing that the sale was void, and passed nothing to the purchaser.
3. A tenant, after the tenancy has terminated, and he has restored the possession to his landlord, may assert a title paramount against him, and the previous tenancy cannot bar his right to recover.

· ERROR to the Circuit Court of Butler. Tried before the Hon. John J. Woodward.

THIS was an action of ejectment brought by the defendant against the plaintiff in error to recover a lot of land in Butler county. It appears by a bill of exceptions that the plaintiff showed a patent for the land to one Manning, and a deed from said Manning to him, dated on the 9th day of January 1838. The defendant then produced in evidence the transcript of a judgment and execution thereon from the County Court of Lowndes, against the plaintiff, and in favor of one Rufus George. This execution issued on the 5th Sept. 1838, returnable to the ensuing term of said County Court, to be holden on the second Monday in February 1839, and on the 17th Sept. 1838, it was levied on the land in controversy by the sheriff of Butler. On the 9th day of February 1339, after due advertisement, said sheriff, in pursuance of the levy, sold the land at public outcry to one John C. Caldwell, to whom he executed a deed, and the said Caldwell on the 1st Sept. 1845 sold it, and made a deed for it to the defendant. It was shown by the defendant that the plaintiff was present at the sheriff's sale and made no objection, and that Caldwell purchased the land at his request, with the verbal promise that he would allow him to redeem it at some future time, if he could do so. It was further shown by him that the plaintiff, up to the 15th day of March 1847, at which time this suit was instituted, had never offered to redeem, and that he had for some time after the purchase by Caldwell recognised his title and held possession of the land as his tenant. The

court charged the jury that the sale having taken place after the return day of the execution, was void and passed no title to Caldwell. The defendant asked the court to charge the jury in effect that the conduct of the plaintiff in not objecting to the sheriff's sale, in procuring Caldwell to become the purchaser, and in aftewards recognising his title and holding under him as tenant, amounted to a waiver of all irregularities in the sale, and estopped him from contesting the title of Caldwell, which charge the court refused to give. To the charge given and to the refusal to charge as requested, the defendant excepted and now assigns them as error.

STONE & JUDGE, for the plaintiff in error:

1. The record shows that Caldwell bought the land sued for at the request of Mundy—that Mundy was present at the sale, and influenced Caldwell to buy—that he, Mundy, ever after acquiesced in Caldwell's title, and that he held the lands as the tenant of Caldwell, at the time of Caldwell's sale to Smith. Mundy, therefore, could never dispute the title of his landlord, nor can he dispute the title of Smith, the vendee of his landlord, Smith standing in the same condition in this regard that Caldwell would occupy.—Randolph v. Carleton, 8 Ala. 607, and authorities therein cited.

2. Although the sale by the sheriff may have been illegal, it having been after the return day of the execution, (Morgan v. Ramsey, 15 Ala. 190) yet Mundy assented to it, and consented that the sheriff might make a deed to Caldwell. This agreement between Caldwell and Mundy was not void under the statute of frauds, because under the circumstances, the sheriff was the agent of the parties, and made a memorandum of the sale, as well as a deed. Caldwell then, although he did not get a legal title, could have compelled Mundy to convey by a resort to equity. But Mundy did what a court of equity would have compelled him to do—gave up the land to Caldwell, never disputed his title, and still farther, held as Caldwell's tenant, at the time Caldwell sold to Smith. He, therefore, never can dispute Caldwell's title, or the title of those claiming under him so long as title remains in the condition it was when the tenancy commenced.

*Doe ex dem.* McPherson v. Walters, 16 Ala. 714, was unlike

the present case—in that case the relation of landlord and tenant never existed between the parties, as it did in the case at bar.

WATTS, for the defendant.

1. A sheriff cannot sell land after the return day of the execution under which the levy is made, although the levy was made before the return day. If the sale be made it is void, not merely voidable, and the puruhaser at such sale will get no title. —See Morgan v. Ramsey, 15 Ala. 190; Branch Bank v. Fry, 16 Ala. 282. The sheriff cannot sell land under a simple *venditioni exponas*. The statute does not authorise the sale of lands under such a writ. The common law did not authorise the sale of lands by execution.—See Statute, Clay's Dig. 203.

2. No verbal contract for the sale of lands can convey a legal title, and although the defendant in execution stands by and sees the sale of the sheriff without objection, and although he request another to purchase the land, yet if the sheriff sell after the return day of the execution, the legal title of the defendant in execution is not divested by such sale, and he may recover at law.—See *Doe ex dem.* McPherson v. Walters, 16 Ala. 714.

3. The bill of exceptions does not show that any request to sell was made by Mundy of the sheriff. The sheriff sold or pretended to sell under and by virtue of the power and authority of the execution and levy, and as in truth and in fact, this gave him no power—he had no authority for his act of sale. The rule of law which makes the sheriff the agent of the defendant in execution only applies in a case of a sale under a valid authority.

4. The rule about landlord and tenant can have no application in this case, where a paramount superior legal title is attempted to be asserted, after the relation of landlord and tenant has entirely ceased. As to whether Mundy ever held as the tenant of Caldwell, was a disputed point in the court below. It would be the highest injustice for this court to consider that Mundy had acquiesced in Caldwell's title. The bill of exceptions does not pretend to set out all the evidence. It must be taken most strongly against the plaintiff, and the bill of exceptions does not shew that there was no contest about this matter. It only shows what was Caldwell's evidence—the evidence of the man through whom the plaintiff in error claimed title.

Smith v. Mundy.

DARGAN, C. J.—In the case of Morgan v. Ramsey, 15 Al. 190, we held that a sheriff had no power to sell land under an execution, after the return day of the writ, and that a sale by him afterwards, unless his authority was revived by some new process, would not pass the title to the purchaser. We were forced to this conclusion by the decisions of this court previously made, and it must now be considered as the settled law.—See Barton v. Lockhart, 2 Stew. & Por. 109; Bobo v. Thompson, 3 ib. 385 ; Farmers Bank of Chattahoochie v. Reid, 3 Ala. 299.

As the sheriff sold the land after the return day of the execution, he acted without legal authority, and no title passed by his sale to the purchaser.

We also held in the case of McPherson v. Walters, 16 Ala. 714, that if one induced another to purchase land at sheriff sale, representing that the land was liable to be sold under the execution, when in truth it was not, that the party was not estopped at law from asserting his legal title against the purchaser at sheriff sale, although he might be in a court of equity. I have reflected on this decision since it was made, and am thoroughly satisfied it is correct, for the legal title to land must always prevail in an action of ejectment, and I cannot conceive how the title to land can pass at law by fraudulent representations, or by acts or conduct *in pais*, without deed. As I understand a legal estoppel, it does not operate by way of prohibiting him who has the legal title from asserting it only, but operates by way of passing the title to him, in whose favor the estoppel works.—Bean v. Welsh, 17 Ala. 770, and cases therein cited. In an action at law, therefore, to prevent the plaintiff from recovering on the ground that he is estopped from asserting his title, the estoppel must be of such a character as will pass the legal title from the plaintiff and vest it in him, who claims the benefit of the estoppel.

But it is supposed that the plaintiff is estopped, because after the sale of the land, he agreed with Caldwell, the purchaser, to rent it of him, and did occupy it afterwards as his tenant. It is true that one who rents land from another and receives possession of him cannot set up title in himself, or a stranger, to defeat a recovery by the landlord. This principle is so familiar, that it needs no authority to support it. He may buy the title of his

14

landlord, or, if the title be assigned or transfered to another during the lease, he may set this up in bar of the landlord's right to recover; but so long as the title remains in the same condition, a tenant who receives possession from his landlord cannot be permitted, whilst he retains that possession, to dispute the title under which he entered by setting up title in himself, or in a stranger. But no authority can be found which would forbid the tenant, after he had yielded up the possession from asserting paramount title to that of the landlord. Indeed all the authorities agree, that if one has the title to land, but obtains the possession by contract of lease from another, although he cannot dispute the title of him from whom he obtained possession, so long as the tenancy continues, yet after this is terminated, and he has restored the possession, he may then assert his title paramount against his former landlord, and his previous tenancy cannot bar him of his right to recover.

Applying these general principles to the record before us, they show that the court did not err, and the judgment must be affirmed.