# Hooper *v.* Columbus & Western Railway Co.

### *Statutory Action in nature of Ejectment.*

1. *Executory contract for purchase of right of way by railroad company.* A written agreement between a railroad company and the owners of certain town lots, through which the track of the railroad had been laid without any legal proceedings to condemn the land ; by which the company agreed to pay a specified sum of money, and to do certain grading and other work on the adjacent lots of the owners, who, "in return," agreed to "give" the company the right of way through the lands, vests in the railroad company only an equitable title, leaving the legal title in the owners.

2. *Ejectment; what title must prevail.*—In ejectment, or the statutory action in the nature of ejectment, the legal title must prevail, and the court can not take cognizance of an equitable title.

3. *Same; as applied to right of way for railroad.*—A railroad company, having constructed its road through plaintiff's lands, without objection by him, under an executory contract for the purchase of the right of way, can not defeat an action of ejectment founded on his legal title, by proof of facts which would constitute an equitable estoppel.

[Hooper v. Columbus & Western Railway Co.]

APPEAL from the Circuit Court of Lee.

Tried before the Hon. H. D. CLAYTON.

This action was brought by George D. and George W. Hooper, suing jointly, against the Columbus & Western Railway Company, to recover the possession of certain town lots in Opelika, through which the track of the defendant's road ran, and was commenced on the 17th April, 1882. As to the lands of which it had possession, the defendant pleaded not guilty, and a special plea in these words : "As to the lands on which said railway company has its right of way, defendant says, that the former corporation, the Savannah & Memphis Railroad Company, contracted with plaintiffs for the same as a right of way, paying them down the sum of $375 on the purchase of the same ; and said plaintiffs agreed to wait for the balance of said purchase-money, being certain work on said lands, which said agreement and contract bears date on the 6th day of September, 1870, and is hereto attached, marked *Exhibit A*, and made a part of this plea ; and postponed the payment of the same to a future day, and permitted the said railroad company to take possession of said lands under said agreement, and to build not only the railroad on and across said lands mentioned in said complaint, but a line of road for sixty miles beyond ; and this defendant claims title and possession through and under said Savannah & Memphis Railroad Company."

The agreement mentioned as *Exhibit A*, which was signed by Samuel G. Jones as president of said railroad company, and by the plaintiffs, was in these words : " *Memorandum* of agreement made between G. D. & G. W. Hooper on the one part, and the Savannah & Memphis Railroad Company on the other part, the 6th September, 1870. (1.) The said railroad company shall pay to the said Hoopers, in cash, the sum of $375. (2.) Said company to fill, level and grade every street which leads to or around Block A (whereon said G. D. Hooper resides) which is cut by said railroad, in such manner and to such extent as to make the crossing of said railroad by each of said streets as ample and convenient as it is possible to make them consistently with the running and use of said railroad ; and this grading, filling and building to extend to the width of twenty-five feet, and to be always kept up by the said company ; *provided*, however, that a bridge, if deemed advisable by both parties, may be built by the company across the railroad on Washington street. (3.) And in return the said Hoopers are to give the said company the right to run their road through the said block, on the road-bed as at present graded, and to the use of all of lot number four (4) on the north side of said track, and the right of way on lot number

[Hooper v. Columbus & Western Railway Co.]

(4) to the extent of twenty-five feet from the centre of said railroad track, on the south side of said track. , (4.) The said railroad company agrees to perform all the work above described to be done by them, by the 1st June, 1871; and it is agreed that, for any failure in said performance, after the 1st June, 1871, they shall pay the said Hoopers the sum of one dollar per day, for each day they are in default. (5.) The said Hoopers reserve the right to remove all the fencing and buildings from said lot four (4); and the company will allow no railroad hand or employee to interfere with, or assist in the same. (6.) Each of said parties binds himself, on the reasonable request of the other party, to make any deed, conveyance, or writing in solemn form, which shall secure to the other any and every right to which the other may be entitled on a fair construction of this agreement. (7.) The said Hoopers will move to withdraw and dismiss, without prejudice, their bill in chancery against said company, the company agreeing to pay the costs. In testimony," &c. Indorsed on this agreement, under date of August 28th, 1871, is a memorandum signed by G. D. & G. W. Hooper, in these words: "The failure of the railroad company to make crossings up to the 1st October, 1871, will not be taken advantage of, provided they are then made as specified in this agreement."

The plaintiffs demurred to this special plea, assigning eight special grounds of demurrer, but their demurrer was overruled by the court; and they declining to plead over, or to take issue on the plea, judgment was rendered against them. The judgment overruling the demurrer is now assigned as error.

S. F. RICE, and JNO. M. CHILTON, for appellants.—The plea sets up an equitable estoppel, which can not prevail against the legal title, in an action of ejectment.—*Chappell v. Glassell*, 13 Ala. 50; Herman on Estoppel, § 408; *Harrison v. Parmer*, 76 Ala. 157; *Tutwiler v. Munford*, 73 Ala. 308; *You v. Flinn*, 34 Ala. 409.

W. H. BARNES, and GEO. P. HARRISON, *contra*, cited *N. O. & S. Railroad Co. v. Jones*, 68 Ala. 48; *McAuley v. Western Railroad Co.*, 33 Vermont, 311; *Austin v. Rutland Railroad Co.*, 45 Vermont, 215; *Knapp v. McAuley*, 39 Vermont, 275; *Trenton Railroad Co. v. Chambers*, 9 N. J. Eq. 471; *Chapman v. Gates*, 54 N. Y. 132; *Provolt v. Chicago Railroad Co.*, 57 Mo. 256.

SOMERVILLE, J.—It is not controverted that the plaintiffs in the present action, which is one of ejectment under the statute, have the legal title to the land sued for, and that the

title of the defendant—the Columbus & Western Railway Co.—is merely equitable. This was settled in *Hooper v. Savannah & Memphis R. R. Co.*, 69 Ala. 520, which involved the construction of the identical contract.

Nor is it denied that the settled rule in this State, in ordinary cases, is, that in actions of ejectment the legal title must always prevail, and that a court of law can take no cognizance of a mere equitable title. It has been uniformly held by this court, that " a court of law will not look to, or *consider* the equity of a party, in opposition of the legal title of the other," and that a court of equity was the only proper forum in which the purchaser of an equitable title could protect himself by invoking the doctrine of equitable estoppel.—*McPherson v. Walters*, 16 Ala. 714; *Smith v. Mundy*, 18 Ala. 182; *Kelly v. Hendricks*, 57 Ala. 193; *Lehman v. Bryan*, 67 Ala. 558; *Tutwiler v. Munford*, 73 Ala. 308.

The only question then is, whether there are any circumstances under which the courts can except railroad companies from the operation of this rule, by reason of the interest which the public has in them, or on any principle of public policy originating in the peculiar nature and use of such public highways. Where the plaintiff has the legal title to a strip of land, through which he has permitted a railroad company to construct its line of road for many miles, can the company, when sued in ejectment at law, preclude the plaintiff from a recovery on the ground of estoppel? Will ejectment, in other words, lie for the fractional part of the road-bed of an extended line of railroad, over and through which the defendant is exercising the right of way, having constructed the road-bed and other improvements thereon by the consent of the plaintiff?

There are cases which support the view, contended for by appellee's counsel, that an equitable title can be set up by estoppel at law in cases of this character, where the plaintiff, having knowledge of the fact that a company is proceeding to construct a line of railroad over his land, allows them to expend large sums of money in such an improvement, without objection. We admit there is much force in the reasoning upon which these cases are based, and a *dictum* occurs in the case of *New Orleans & Selma R. R. Co. v. Jones*, 68 Ala. 48, where some countenance was given by us, *arguendo*, to this doctrine. So, in *Pollard v. Maddox*, 28 Ala. 321, where the plaintiff's deed to a railroad company failed to convey the legal title to land, it was so far construed to operate as a covenant granting the right of way, as to bar the plaintiff by estoppel from claiming damages in an action of trespass at law.

We have re-examined the authorities on this question, with some doubts as to which is the sounder and better rule in such

[Hooper v. Columbus & Western Railway Co.]

cases.—*McAuley v. Western Vt. R. R. Co.*, 33 Vt. 311; *Provolt v. Chicago Railroad Co.*, 57 Mo. 256; *Evans v. Missouri Railway Co.*, 64 Mo. 453; *Trenton Co. v. Chambers*, 9 N. J. (Eq.) 471; *Goodin v. Cincinnati Canal Co.*, 18 Ohio St. 169; Mills on Eminent Domain, § 140–41. We have reached the conclusion, that the courts can make no exception, based on sound and just principles, which would exclude railroad companies from the operation of the general rule, that in actions of ejectment at law the legal title must prevail. Where property is acquired by the exercise of the right of eminent domain, whether by railroad companies, or for other public use, the constitution requires that "just compensation shall, in all cases, be first made to the owner."—Const. 1875, Art. 1, § 24. Pre-payment of price to the owner of lands, sought to be condemned, is thus made a condition precedent, without which the title is not divested, or affected in any manner.—*New Orleans Railroad Co. v. Jones*, 68 Ala. 48; Mills on Em. Domain, § 130. The policy of our law, therefore, is to protect the property rights of the citizen, just as effectually against seizure without compensation for public, as for private uses. *Smith v. Chicago & St. Louis Railroad Co.*, 67 Ill. 191. It is in recognition of this principle that an action of ejectment has been sustained in favor of a private citizen, against agents and officers of the General Government, for lands held by them in the name and for the use of the Government.— *United States v. Lee*, 106 U. S. 196. While it is permitted to the Government, by reason of its sovereignty, to enjoy the immunity of refusing to be sued in its own courts without its consent, all other persons, private and corporate, must stand upon a basis of equality before the law, in the enforcement and defense of their legal rights in courts of justice in this State, at least so far as is practicable.—*South & North Ala. R. R. Co. v. Morris*, 65 Ala. 193; *Home Protection of North Ala. v. Richards & Sons*, 74 Ala. 456; *Smith v. Chicago Railroad Co.*, 67 Ill. 191, 195.

In the present case, the plaintiffs have by contract retained the title of the property for their own security, as they had the lawful right to do. If an individual were the defendant in an ordinary case, the law would hold that the plaintiffs could recover upon the strength of their legal title. So likewise, as we have seen, were the defendant an officer or agent of the General Government, holding the property in the name of the sovereign for public uses; this does not preclude the legal title from prevailing, according to the better opinion. It is difficult to perceive that the public can claim an estoppel upon any other principles than an individual, for the public is but an aggregate of individuals. Its rights, therefore, where the sover-

[Montgomery Iron Works v. Dorman.]

eignty is not concerned, is but the summation of the rights of a multitude of single persons. As said by a learned English judge, in a case where it was urged that a vendor's lien could not be enforced against land taken by a railroad company, "the public can have no rights springing from injustice to others." *Walker v. W. H. & B. Railway*, 12 Jur. N. S. 18.

We can not see, moreover, that the public would be any more inconvenienced by the action of ejectment in this case at law, than they would by the enforcement of the vendor's lien by a court of chancery, which would result in a sale of the land by order of that court, and, in the event of its purchase by the plaintiff or any other vendee, in the placing of such purchaser in the actual possession.—2 Story's Eq. Jur. (12th Ed.), § 1231*b*.

It would be no hardship on the defendant to compel a resort to a court of equity in this case, where a bill could be maintained, if at all, only by tendering payment of the balance due by them to the plaintiffs for the land, and which they had failed to pay.—*Trenton Co. v. Chambers*, 9 N. J. (Eq.) 471; *Goodin v. Cincinnati Canal Co.*, 18 Ohio St. 169; *Evans v. Missouri Railway Co.*, 64 Mo. 453.

The judgment is reversed, and the cause remanded.