# Purifoy, Auditor, v. Lamar.

*Application for Mandamus to Compel Auditor to Execute a Deed to Purchaser of a Railroad at a Tax Sale.*

1. *Taxation; railroad real estate for such purpose.*—For the purposes of taxation, the right-of-way, roadbed and track of a railroad company, constituting what is ordinarily called the railroad, are treated as real estate, and are to be assessed and dealt with in the collection of taxes and sales for delinquency as are all other lands.

2. *Same; sale for taxes of a part of a railroad under the statute vests State's interest in the purchaser, entitling him to Auditor's deed therefor*—When the State Board of Assessment has apportioned to a particular county for taxation a certain number of miles of a railroad, which has been assessed as required, if the taxes so assessed are not paid, that part of the railroad lying in said county is subject to sale for the delinquency; and if the State becomes purchaser, then at a subsequent sale of such property under the provisions of the act approved February 9, 1895, "To dispose of lands which have been, or may hereafter be, sold for taxes and bid in by the State, and which have not been redeemed or purchased from the State," (Acts of 1894-95, p. 448), the purchaser becomes invested with all the right, title, interest and claim of the State therein, and is entitled to a deed from the Auditor of the State thereto; and the fact that the property so sold and purchased is a segregated portion of an operated railroad constitutes no bar to the purchaser's right to the Auditor's deed and the possession of the part of the railroad so purchased.

3. *Same; duty of Auditor; performance thereof enforceable by mandamus.*—Where a sale of property has been made by a probate judge under the provisions of the act "To dispose of lands which have been, or may hereafter be, sold for taxes and bid in by the State, and which have not been redeemed or purchased from the State," (Acts of 1894-95, p. 488), upon the receipt of the return of sale from the probate judge it is the duty of the State Auditor to execute a deed and return it to the probate judge for delivery to the purchaser, in the exercise of which ministerial duty the Auditor has no right of discretion; and upon his failure to comply with this requirement of the statute, his performance thereof can be enforced by *mandamus*.

APPEAL from the City Court of Montgomery.

Heard before the Hon. WILLIAM S. THORINGTON.

The proceedings in this case were commenced by a petition, addressed to the judge of the City Court of Montgomery, which was as follows: "Your petitioner. Howard Lamar, who is a resident citizen of the county of Walker, State of Alabama, respectfully represents to your honor as follows: That in the year 1890, the State Board of Assessment for the assessment of the property of railroads apportioned to said county of Winston, twenty-three and twenty hundreds (23, 20-100) miles of main track and 40-100 miles of side track of the Birmingham, Sheffield and Tennessee River Railroad Company, and assessed the taxes thereon as required by law. That such apportionment and assessment was duly returned by said Board of Assessment to the tax assessor of said county, and said assessment was duly entered by

said assessor on the assessment books of said county, as by law required. Said assessment being for the taxes due the State and the county of Winston on said property for the year 1890. That said taxes, so assessed, were not paid and became delinquent. That thereupon proceedings were begun, in accordance with law, in the probate court of said county, for the sale of said real estate, for the payment of such taxes, and for the legal charges for fees and advertising notices, as allowed by law. That in such proceedings and on the 6th day of April, 1891, the said probate court of Winston county rendered a decree, ordering the sale of said lands, and, in pursuance thereof, the same were duly sold to the State of Alabama, and thereupon W. R. Adkins, as judge of said probate court on, to-wit, the 16th day of May, 1891, certified to the Auditor of the State of Alabama the fact of said purchase by the State, as required by law. All of which appears by a copy of said certificate, which, together with the certificate of John Purifoy, as Auditor of said State, to the correctness thereof, is hereto attached, marked 'Exhibit A' and made a part of this petition. Petitioner further showeth unto your honor, that, in pursuance of the duty imposed on the probate judge of Winston county by the provisions of an act of the General Assembly, entitled 'An act to dispose of lands which have been or which may hereafter be sold for taxes and bid in by the State, and which have not been redeemed,' or purchased from the State,' approved February 9, 1895, R. L. Blanton, as judge of the probate court of Winston county, Alabama, did expose for sale on the 4th day of November, 1895, said real estate of said Birmingham, Sheffield and Tennessee River Railway Company, viz. 23 ,20-100 miles of main track, and 40-100 miles of side track of said railway company, and being that portion of the line of railroad of said company, lying in said Winston county and assessed for taxes in said Winston county for the year 1890, and thereafter sold on May 4th, 1891, for said taxes, and bid in by the State, as aforesaid. That at said sale on the 4th day of November, 1895, your petitioner became the purchaser of said real estate and paid the amount bid by him at said sale to said probate judge. All of which appears by a copy of the certificate of said R. L. Blanton, as judge of probate as aforesaid, which is hereunto

attached and marked 'Exhibit B,' and made a part of this petition. That petitioner also paid said probate judge at the time of his said purchase the further sum of one dollar, as fee for the Auditor of the State for taking acknowledgement of his deed of release to said lands. That thereupon the said judge of probate duly returned to the Auditor, in accordance with law, a report of said sale, showing the said land as sold to petitioner, and the amount paid by petitioner as purchase money of said land and that paid as aforesaid for the Auditor's fee for making a deed thereof to petitioner. That said return was made along and on the same sheet with similar returns of other real estate, sold by said probate judge, a copy of that part of such return, which shows the action of said probate judge in selling said real estate to petitioner, is hereto attached, marked 'Exhibit C,' and made a part of this petition. Petitioner further showeth that after the filing of said certificate and return, and before the filing of this petition, petitioner did apply to the said John Purifoy, as Auditor of the State of Alabama, for a deed to said real estate, under and in accordance with the terms and provisions of said act of the General Assembly of Alabama; but, the said John Purifoy, as Auditor as aforesaid, notwithstanding the plain and imperative duty on him imposed by said act, did positively refuse and still refuses to execute a deed to petitioner for said lands so sold, in compliance with the terms of said act. The letter of the Auditor to petitioner, refusing to execute such deed, is hereto attached, marked 'Exhibit D,' and made a part hereof. And petitioner avers, that he is wholly without any remedy in the premises save by this court's writ of mandamus.

"Wherefore your petitioner prays, that an alternative writ of *mandamus* issue out of your honor's court directed to said John Purifoy, as Auditor of the State of Alabama, commanding him to appear before your honor's court at an early day to be named in said writ, then and there to show cause, if he can, why he should not be compelled to execute a deed to petitioner for the real estate hereinbefore described, in accordance with the provisions of the said act of the General Assembly of Alabama."

The exhibits referred to in the petition, and which were attached thereto, disclosed the facts as stated in the petition. The letter of the respondent, which was

[Purifoy, Auditor, v. Lamar.]

marked Exhibit D, and addressed to the petitioner, Howard Lamar, was as follows : "Dear Sir : After due consideration of the matter of executing to you a deed to that part of the Birmingham, Sheffield and Tennessee River Railway lying in the county of Winston, in this State, and full consultation with the Attorney General, I have concluded to decline to execute a deed to you for it, on the ground that it is not 'land' within the meaning of the statute under which it was last sold."

Upon the filing of the petition the alternative writ of *mandamus* was awarded, setting out the facts as stated in the petition. To this writ of *mandamus* the respondent demurred upon several grounds, the substance of which may be summarized as follows : 1. "That the petition upon its face discloses that the property which the said Howard Lamar bid for in Winston county, Alabama, on the 4th day of November, 1895, was and is a railroad, and not land or lands." 2. "That the petition upon its face shows that the property which the said Howard Lamar bid for in Winston county, Alabama, on, to-wit, the 4th day of November, 1895, was and is the segregated portion of a builded and operated railroad in the State of Alabama." 3. "Because the petition shows that the said Lamar claims to have purchased under a sale had in compliance with the terms and provisions of the act of the General Assembly of Alabama, approved February 9, 1895, entitled 'An act to dispose of lands, which have been and may be hereafter sold for taxes and bid in by the State, and which have not been redeemed or purchased from the State.' That the provisions of said act apply to and only relate to the sale of lands, and in no way contemplate or provide for or authorize the sale of an operated railroad, or of a segregated portion of a builded and operated railroad in this State." 4. "Because the word 'lands' as used in the caption and body of said act of the General Assembly, approved February 9, 1895, does not include a railroad or railroads in operation in this State ; nor does it include a segragated portion of an operated railroad." 5. "Because the petition shows that the petitioner did not purchase land or lands at the sale had in Winston county, in November, 1895, under the said act approved February 9, 1895, and consequently shows that he bought nothing."

[Purifoy, Auditor, v. Lamar.]

Upon the hearing of this demurrer, the court overruled the same, and granted the prayer of the petitioner, ordering a peremptory *mandamus* to be issued in accordance therewith, unless the defendant should, within ten days from that date, file an answer to said petition.

From this judgment the respondent appeals, and assigns as error the overruling of his demurrer, and the rendition of the judgment.

WILLIAM C. FITTS, Attorney-General, for appellant. The act of February 9, 1895 (Acts 1894-95, p. 488) was never intended to include the sale thereunder of an operated railroad, or as in this case, the sale to an individual, for a mere nominal sum, of a segregated portion of an operated railroad. Such a construction of the statutes in question is contrary to public policy and to the true intent and meaning of the new law as appears upon its very face.

A railroad is not land. See the opinion of the Supreme Court of the United States in the case of *East Ala. R. Co. v Visscher*, 114 U. S. 341. Furthermore according to the very spirit and policy of our statute law, an operated railroad can not be held to be land. An examination of the chapter (Code of 1886, §§ 494, 495 *et seq.*) upon assessments of railroads, is bound to bring the mind to this conclusion. Railroad property is not treated or assessed at all as real estate. It is to say the least mixed property. The rolling stock, cars and other personalty is not in any way separated from the roadbed, but all assessed by the State Board together, and the lump assessment for each county, as prorated, certified by the Auditor to the county officials of each county. If the railroad is not land when assessed, but is assessed in a very different way from the lands in the State, how can it be said or held to be land when that same tax is in default and unpaid?—Code of 1886, §§ 494, 495. The railroad was not land within any reasonable meaning of the act now drawn in question.

JAMES WEATHERLY, HOWARD LAMAR AND GORDON MACDONALD, *contra.*—Railways or street railways either in streets or elsewhere are lands within tax laws, and taxable as such.—25 Amer. & Eng. Encyc. of Law, 105 ; Kerr on Realty, pp. 20, 21, 27, 45, 88, 96, 97 ; *People v.*

*Commisssoners*, 82 N. Y. 459 ; *Un. Trust Co. v. Weber*, 96 Ill. 346 ; *Auditor v. Jackson County*, 65 Ala. 142 ; Code of 1886, § 2, sub-div. 2 ; *Ib.* § 450, sub-div. 1 ; *Ib.* § 503 ; *People v. Com.*, 101 N. Y. 322 ; *People v. Cassity*, 46 N. Y. 46.

2. The Supreme Court of Alabama has held in three cases that an action of ejectment will lie to recover a right of way of a railroad company, and that a railroad right of way is land in the meaning of the law.—*Jones v. N. O. & S. R. R. Co.*, 70 Ala. 227 ; *T. & C. R. R. Co. v. E. A. R. Co.*, 75 Ala. 516 ; *Hooper v. C. & W. R. Co*, 78 Ala. 213.

3. The legislature is presumed to have meant what the word "land" really means when it used that term in this statute. If it did, then the right of way sold under the sale of November, 1895, passed as "land," and the Auditor did his duty when he reported this "land" as belonging to the State, to the probate judge, and it was proper for the probate judge to sell it under the act approved February 9, 1895.—Code of 1886, § 450 ; Definition of "Real Property" in Bouvier's Law. Dic.

4. This mode of assessing railroad property as provided by our statute is substantially like that of many of the States, and has been sustained and enforced repeatedly by the courts ; and the right of way, roadbed, etc. of a railroad held to be real estate for taxation purposes. *Tenn. & C. R. R. Co. v. East Ala. R. Co.*, 75 Ala. 516 ; *Hooper v. R. R. Co.*, 78 Ala. 213 ; *O. & M. R. R. Co. v. Weber*, 96 Ill. 443 ; *Un. Trust Co. v. Weber*, 96 Ill. 346 ; *Railroad Co. v. People*, 98 Ill. 350 ; *Ib.* 99 Ill. 464 ; *Railway Co. v. Goar*, 118 Ill. 136 ; *R. R. Co. v. People*, 129 Ill. 571 ; *R. R. Co. v. People*, 137 Ill. 181.

5. Express authority is conferred for the bidding in of real estate for the State, for State and county taxes, for its protection and enforcement of the lien ; the State becoming a purchaser on the same terms and acquiring the rights of an individual purchaser.—*State v. Brewer*, 64 Ala. 287. As before stated, there is no provision anywhere made for a sale of the road as an entirety, nor in any other manner than as other taxes are collected by the local collectors along the line of the road. Even without these provisions, it is a well settled principle that where no particular remedy is provided for the collection of a tax, or enforcement of any other right, the ordinary

methods provided by law for such enforcement of collection applies.—*State v. Severance,* 55 Mo. 378.

6. With reference to the execution of deeds to lands sold under the provisions of and in accordance with the act approved February 9, 1895, the Auditor's duties are purely ministerial and with reference to which he has no right to exercise any discretion whatever, but should have acted in strict compliance with the mandates of the statute.—19 Amer. & Eng. Encyc. of Law, 456 ; *Ib.* 477-480 ; *Grider v. Tally,* 77 Ala. 422 ; *Tenn. & Coosa R. R. Co. v. Moore,* 37 Ala. 371 ; *Morton v. Comptroller,* 4 S. C. 430 ; *Commissioner v. Smith,* 5 Tex. 471 ; *Ins. Co. v. Wilson,* 8 Peters 291 ; *Rains v. Simpson,* 50 Tex. 495 ; *Hudmon v. Slaughter,* 70 Ala. 546 ; *Arberry v. Beavers,* 55 Amer. Dec. 791 ; *Flournoy v. Jeffersonville,* 79 Amer. Dec. 468. Whether the deed of the Auditor to appellee would have supported an ejectment in his favor, against those in possession of the property sold or not, or whether it was effective to pass any title to appellee or not, yet, as it showed that all the State's lien and claim for the taxes due had been assigned to appellee, it was the Auditor's duty to execute it, and very greatly to appellee's interest that he should do so.— Code of 1886, § 597 ; Acts of 1894-95, p. 488.

HARALSON, J.—The only grounds upon which the State resists the application for *mandamus* are that "railroad property is not treated or assessed at all as real estate ;" and that the statutes under which the sale was made, were "never intended to include the sale thereunder, of an operated railroad, or, as in this case, the sale to an individual, for a mere nominal sum, of a segregated portion of an operated railroad ;" that such a construction is contrary to public policy and the true intent and meaning of the law. The Auditor in his letter to the purchaser of the land, stated, that after full consultation with the Attorney General, he had concluded to decline to execute a deed to him for the property purchased, "on the ground that it is not land within the meaning of the statute under which it was sold."

The Code of this State, in section 494–509, inclusive, provides a mode for assessments of taxes against railroads, telegraph, telephone, express and sleeping car companies. It is the duty of the tax-assessors of the different counties, to assess the taxes on all other species

of property in the State, as provided in sections 468–493, inclusive, of the Code.

The Code, section 2, sub-div. 2, defines the term "real property," as "co-extensive with lands, tenements and hereditaments ;" and in section 450, sub-div. 1, those words are again, for the purposes of taxation, defined "to mean and include not only land, city, town and village lots, but also all things thereunto pertaining, and also all structures and other things so annexed or attached thereto, as to pass to a vendee by the conveyance of the land or lot."

For the purposes of taxation, the rule is well settled, that the right-of-way and the road-bed of railroads, in the absence of statute regulation, are treated as real estate, or an interest in land.—Wetty's Law of Assessments, § 142 ; Hilliard's Law of Taxation, 273–276 ; 1 Desty on Taxation, 396 ; Cooley on Taxation, 367 ; *The People v. Cassity*, 46 N. Y. 46 ; *The People v. Beardsley*, 52 Barb. 105 ; *The People v. The N. Y. & H. R. R. R. Co.*, 101 N. Y. 322 ; *The Sangamon & M. R. Co. v. The County of Morgan*, 14 Ill. 163.

In the *Tenn. & Coosa R. R. Co. v. East Ala. R'y Co.*, 75 Ala. 516, after citing cases tending to show that the road-bed and superstructure are considered realty, it was said : "There is much reason for the opinion. The road-bed and right-of-way are as immovable as the soil itself, the superstructure is attached to the soil, and the corporation has the exclusive right to the possession of it. In the *Central Pacific R. R. Co. v. Benity*, 5 Sawyer, the precise question we are considering was presented, and the court, Circuit Justice SAWYER participating, decided the action of ejectment would lie. So we hold in this case." See also *Jones v. N. O. & S. R. R. Co.*, 70 Ala. 227 ; *Hooper v. C. & W. R. R. Co.*, 78 Ala. 213.

That the track and right-of-way of a railroad is land is also recognized in the statutes providing for assessments against railroads. Section 503 provides, that when the board shall have completed the assessment of the property of any railroad company, "the Auditor shall notify the tax-assessor of each county through which such railroad runs, of the number of miles of track in his county, and the value thereof, and the proportionate value of other property of such company assessed by the board of assessment, and taxable in his

county, which he must enter in the book of assessment, in addition to the assessment *of other real estate*, fixtures, machinery, &c., to be assessed as other property of like kind owned by private citizens of his county," &c. Here, the railroad track is classed and directed to be entered as real property, with other real estate.

The case of the *East Ala. R'y Co. v. Visscher*, 114 U. S. 340, is the only one relied on by appellant, to show that the property which was sold in this case was not land. But the decision there, seems not to be in conflict with our decisions to which we have referred. The court say, p. 350 : "The right granted was merely a right-of-way for a railroad. * * * What it acquired was a mere easement in the land, to enable it to discharge its function of making and maintaining a public highway ; the fee of the soil remaining in the grantor." This easement the court held was not the subject of a levy and sale under execution. They say further : "But in the view we have taken, as before stated, of the facts of this case, it is not necessary to discuss the general question as to the right to levy an execution at law on property owned by a railroad company in fee." However this may be, under the statute of this State, and the decisions above referred to, there can be no doubt about the question, that a railroad, especially for the purposes of taxation, is to be classed as land.

As to the second objection urged, that a sale cannot be made of a segregated portion of an operated road, as being contrary to public policy, it is sufficient to say, that we have held to the contrary in the cases referred to, (*Tenn. & C. R. R. Co. v. E. Ala. R'y Co.*, and *Hooper v. C. & W. R'y Co.*), in which it was held that ejectment will lie for a part of an operated railroad. In the latter case, on this question, it was said : "We cannot see, moreover, that the public would be any more inconvenienced by an action of ejectment in this case, at law, than they would by the enforcement of the vendor's lien by a court of chancery, which would result in a sale of the land by order of that court, and in the event of its purchase by the plaintiff or any other vendee, in the placing of such purchaser in actual possession.—2 Story Eq. Juris., § 1231 b."

Section 7 of the act, "To dispose of lands which have been or may hereafter be sold for taxes and bid in for

[Purifoy, Auditor, v. Lamar.]

the State, and which have not been redeemed or purchased from the State,"—approved February 9, 1895, (Acts 1894–95, p. 488),—under which the sale of the land in this case was made, provides, "That it shall be the duty of the Auditor on the receipt of the returns from the probate judge, to make out, execute and return deeds to the probate judge, for delivery to the purchaser. Such deeds shall convey to the purchasers all rights, title and interest and claim of the State." Under this act, the duties of the Auditor, so far as the execution and delivery of the deed is concerned, are purely ministerial, with reference to which he has no right of discretion, but his duty is to comply with the mandate of the statute. He cannot suggest error or mistakes or illegality in the proceedings ; but, upon the facts properly certified to him, relieved of any discretion in the matter, his duty is to proceed to make the deed, as the statute enjoined.—19 Am. & Eng. Encyc. of Law, 456, and authorities cited ; *Grider v. Tally,* 77 Ala. 422 ; *Flournoy v. City of Jeffersonville,* 17 Ind. 169 ; s. c. 79 Am. Dec. 468, and note.

A *mandamus* lies against the Auditor to compel the performance of a purely ministerial duty enjoined by statute.—*Tenn. & C. R. R. Co. v. Moore,* 36 Ala. 371 ; *Hudmon v. Slaughter,* 70 Ala. 546.

It may be proper to add, that we have confined our decision to the case as presented. We have not considered the legality or regularity of the proceedings of the board of assessment, or the other proceedings leading to the sale and purchase of the land by the appellee. Whether, when the deed is made to him of the "title and interest and claim of the State," he has acquired such title as will enable him to sue for and recover the land in controversy, is a question not herein raised or decided.

Affirmed.